This case is United States of America v. Jamil Sims. May it please the Court, my name is Enid Harris and I represent Jamil Sims, the request five minutes of rebuttal. Thank you. Jamil Sims pleaded guilty on January 17, I believe it is, to conspiracy under 18 U.S.C. section 1594 subparagraph C. He admittedly the conspiracy was to violate 1591 subparagraph A. He admitted that in his plea colloquy that was in the indictment initially. Excuse me? You said he admitted to A, did he also admit to B? No, I don't. Well, B, and that is part of the argument here. Well, it's actually, it's not, it's a fact or I'm looking for. I was going to say that. Did he plead guilty just to A or did he plead guilty to A and B? Well, I'll say A and B. It was to 1591. But the B section sets forth penalties. The A section describes the substantive effects and that's one of the things at issue here. He pleaded guilty, though, to 181594 C. Let me ask you this question. Why doesn't application note 2 of 2X1.1 resolve the appeal? I don't have that in front of me, but I would say 2X1.1 doesn't even apply at all because everything is in the two statutes at issue here, as the Wayland Court in the Ninth Circuit explained. You don't have to look at 2X1.1 because the way it's set forth in 1594 C and even in 1591, it indicates that, well, 1594 C is a separate conspiracy. Let's just take a step back. I know you want us to follow Wayland. Fabulous. But let's assume that we're not going to do that. Okay. Okay. So my question to you is 2X1.1 suggests a process in thinking about this, right? Right. So when when you look at the application note 2 of 2X1.1 and 2G1.1, those together, right, would lead one to a particular conclusion. Right. So now tell me why that conclusion isn't correct. May I get a copy of the guidelines out of my briefcase? Absolutely. Absolutely. Okay. First of all, the term substantive offense, that would be in comment 2. It's my position that the substantive offense here, for lack of a better phrase, and there isn't really any better phrase here, is what he pleaded to, 1594. And it's a substantive offense for a number of reasons, primarily because it's set apart from the rest of 1594, and it has a separate punishment in it. It's anywhere from nothing to life, as opposed to having a mandatory minimum. Counselor? Yes. My problem with this is that in the criminal law, substantive offense is used as a term of art. We have inchoate offenses, attempt, conspiracy, complicity, and they piggyback on a substantive offense, what the person was soliciting or attempting or conspiring to commit. So why should we not read the word substantive offense in keeping with note 2 and the way that it's ordinarily used in criminal law? It can't be 1594, which is a conspiracy offense. It has to be what the conspiracy was aiming at, which is 1591. I suggest there is a difference in this case because there are separate subsections. 1594 subsection A talks about attempts. It doesn't even say conspiracy to do a 1591 crime. B lists some other crimes and talks about conspiracy, but it doesn't talk about 1591. The only other place in that statute where it talks about 1591 is subparagraph C. And my position is that that language takes this substantive offense rubric out of the equation. Okay. This is different. Is this? Pardon me? So you're arguing that there's something in this subsection that makes it different from the way that substantive offenses are treated throughout the guidelines and the rest of the criminal code. What's special that means we shouldn't treat substantive offenses meaning what it means in 2X1.1? What's special is it has no mandatory minimum. Which impliedly, and I agree with Waylon Court on this, impliedly means that there was something very important about having no mandatory minimum in that specific section. I think, though, that list of 2X1.1, the substantive offense, applies to a number that include mandatory minima. The 2D1 offenses, if I recall, are the drug offenses, and there are quite a lot of drug offenses. The 2D1, under application of 1, all those 2D1 offenses, they've got mandatory minimum sentences, and yet they're covered by this. I don't disagree with that. My position, though, is the same. And so I said that was dispositive for Waylon. Yes, I do want you to follow Waylon. Part of it has to do with the statutory background, not only of 1594, but 1591A and B. They took a lot of notes on this. 1591, as originally enacted in 2007, didn't have any mandatory minimums for anything. It was changed ultimately after all this legislation, Adam Walsh Act, the Wilberforce legislation. Well, let me ask you this question. I think we're aware of Adam Walsh and why it was passed and so forth. Let me ask you this question. If we rule in your favor, does that mean that there will be no circumstance where a conspiracy conviction on its own could merit an offense level of 34? That's what it would mean. Never. In these circumstances, conspiracy to... So let me give you a hypothetical then. You have a drug kingpin. Think of the largest kingpin you can think of. Are you pointing to Judge Hardiman? Okay. I thought you were pointing at Judge Hardiman. I looked at him for cerebral solace. Okay. El Chapo. Okay. And think of a lookout that works for El Chapo. Just a lookout. So the lookout, because of whatever reason, pleads to a substantive offense, right, of the type that we're talking about here. El Chapo leads to a conspiracy. Now, one of the principles that we have in looking at the guidelines and laws... No, you're not saved by the red light. We're going to chat for a little bit. I'm not saved, okay. Yeah. Come on, stay with us a little longer. One of the things that is important in thinking about this area of law is we want to stay away from absurd results, okay? So you're with me on the hypothetical. So if we followed you, right, and El Chapo pled to conspiracy and the lookout pled to a substantive offense, that would mean that the lookout would be subject to an offense level of 34, but El Chapo, right, would be subject to no more than an offense level of 14. Would you agree in that hypothetical that that would be an absurd result? Except for the last part, no more than 14. The rest of the guidelines, particularly enhancements, would certainly be in place. Enhancements for leadership role, enhancements for number of victims or maybe even a gun or something if it's a drug trafficking crime. There would still be enhancements that would be applicable to El Chapo. Right, but that doesn't answer the basic question. The base offense level still seems quite absurd, right? The disparity in the base offense level for the lookout versus the kingpin is hard to. It does seem absurd, but my criticism would be that the lookout's lawyer didn't do as good a job at negotiation as El Chapo. Well, the hypothetical isn't thinking about a future 2255. So, OK, I think you've answered the question. Thank you, Ms. Harris. We'll hear you. Thank you, Your Honor. Mr. Semper. Good afternoon, Your Honors. If it pleases the court, my name is Francis Semper. I represent the government in this case. Your Honor, the district court in this case, we believe, followed the plain language and formula, if you will, of the sentencing guidelines in this case in determining that Mr. Sims has a base offense level of 34. Sorry, I wanted to wait for you to finish your sentence. So just a couple of questions. So offense of conviction, right? So if we just look at that, the plain language used in 2G 1.1 AA1, the offense of conviction here is 1594C, right? Correct. So if we were just going on plain language, I think I know where you're going to go after this, but I'm going to ask the question anyway. So if we're just going on plain language, then 1594C wouldn't fit within the ambit of this guideline, right? But you have to go to 2X 1.1 to start this whole process. You don't start at 2G 1.1. Okay. So I want to piggyback on what you're saying. Okay. Is that okay? You said you looked to me for cerebral psoriasis. That's what I get for such a nice compliment. Go ahead, please. So following up on Judge Greenaway's question, when you direct our attention to 2X 1.1, does that mean that its reference to applying the base offense level for the substantive offense is the critical distinction? Because it doesn't say apply the guidelines section for the substantive offense. Correct. 2X 1.1 directs you not just to 2G 1.1. It directs you to a base offense level. Okay. And take us through that progression. Okay. 2X 1.1, 1594C is a conspiracy that is not covered by a specific guideline. It's not expressly covered. That's why we go to 2X 1.1 to begin with. 2X 1.1 says apply the base offense level, application note 2, for the substantive offense that was the object of that conspiracy. In this case, it's clear that the substantive offense that was the object of the conspiracy was sex trafficking by force and coercion under 1591A1 and B1. And what is the base offense level for that? 34. So I have a more fundamental question. Would you concede that in thinking about this guideline and the appropriate offense level, that there's got to be some ambiguity? You would concede that there's some ambiguity, right? Just a little more. Obviously, your adversary has taken a separate position, but the interesting thing about all this is that we have now the Ninth Circuit taking a different position. So I presume that, based on that, you would concede that there's got to be some ambiguity here. I think the ambiguity is, if there's any ambiguity, is that in 2G 1.1 it talks about offensive conviction, and it mentions B1 without mentioning A1. The two of them really have to be read together. Well, how are we to do that, right? I mean, we spend so much of our time, particularly here at the appellate level, on what was said, right? Whether it's Congress, in this instance, the sentencing commission, what was said, what was not said. What should we, what can we intuit from what was said, and so forth. You're absolutely right. They could have said A1. They didn't, right? So in that instance, would you then concede that there's got to be some ambiguity here? Only to the extent that you just mentioned. But even Wei Lin, the Wei Lin case, said that the substance of offense of sex trafficking by force and coercion has a 34. Even Wei Lin acknowledged that. And this is a conspiracy. So then what mistake did Wei Lin make, in your view? Wei Lin, I think the mistake the court made there is that— Everyone agrees with the notion that a substance of offense is 34, right? Everyone agrees with that. Right. What Wei Lin, I think the mistake Wei Lin made, because they mentioned 2X1.1, and they mentioned it as simply directing it to the guideline of 2G1.1. Instead of what it does, it actually directs you to a specific base offense level under that guideline. That's, I think, the mistake that they made. Because they went from 2X1.1, almost in a vacuum, to 2G1.1. And they looked at 2G1.1, and they said, well, for an offensive conviction under B1, it's 34. For all other offenses, it's 14. 1594C is not B1, therefore it's a 14. But what they didn't do was look at Application Note 2, under 2X1.1, which directs them not just to that guideline, but to a specific base offense level for that guideline. They obviously were not persuaded by the Application Note. So am I hearing you that you would not concede that there's some ambiguity? Again, there's no ambiguity that sex trafficking by force and coercion has an offense level of 34. And sex trafficking by force and coercion is a violation of A1 and B1. That's the statute, A1 and B1. This defendant, Mr. Sims, pled guilty to a conspiracy to violate A1 and B1. So the way you artfully worded your response to Judge Greenaway did not contest that there is an ambiguity in the case before us, right? The Ninth Circuit came to a contrary position, and it was not completely unreasonable. So shouldn't we apply lenity? I mean, I think the status of lenity in the guidelines is a bit unsettled in our circuit, but wouldn't the application of the rule of lenity favor, even if it's not the most natural reading, if it's a plausible reading, shouldn't we tend towards the lower guidelines and let the commission raise it if they want to? I don't think so because it's not a plausible reading if you ignore 2X1.1's directive. Let me explain why it might be a plausible reading. A lot of the guidelines are pegged to statutory mandatory minima. The approach the commission generally took in the drug crimes, for example, was not put the guidelines where they think is right and then let minima trump them. They pegged it so that if you were subject to a mandatory minimum, the guidelines would already get you basically there. And this is a situation in which the statutory mandatory minima is very different, depending on if you were convicted of the substantive sex trafficking, you've got a mandatory minimum under the Adam Walsh Act. If you're convicted of this conspiracy, he has no mandatory minimum here, correct? Correct. So that was part of Weyland's reasoning as to why it is plausible that the commission would set a different base offense level for the substantive sex trafficking crime from the conspiracy because one is already satisfying, going hand in glove with Congress's mandatory minimum, and one doesn't need to because there's no mandatory minimum. But both of those statutes call for a potential statutory maximum of life. There aren't that many crimes that Congress says the statutory maximum. I don't understand why the maximum matters. My understanding is that the guidelines are generally pegged to whatever minimum is applicable, and you see that throughout the drug crimes, certainly. If you look at the guideline scheme, as you've talked about, as a whole, and you look at the conspiracies that are pegged to specific guidelines, those are invariably the same base offense level as the substantive offense. Yeah, but you don't see many of them that are pegged up at a 34 to start with, right? The 34 here is explicable because of the Adam Walsh Act's mandatory minimum for the substantive, and you see things like that in some drug crimes. So I think that it may not prevail, but it's plausible, and once we're in plausible land, doesn't lenity then, say, tie those to the defendant? Well, I think you have to look at the fact that prior to 1594C's enactment, a conspiracy under this section was under 371, and the maximum penalty was five years. Now it's life. I think that's another indication of how serious Congress took this offense, and for someone to be convicted of conspiracy with, say, a criminal history category one, and have a guideline range of 15 to 21 months, and for the person who's convicted of the substantive offense to have a guideline range of 151 to 188 months, that doesn't make sense. I have several responses, one of which is he stole my thunder on rule of lenity. Sorry. No, it's easy. But here's the question I have for you that arises from this distinction you're drawing. If we look at 2G1.1, under what circumstances would a defendant receive a level 14? I think in a violation of the Mann Act under 2421. I've had cases where I've prosecuted Mann Act violations transporting someone across state lines for the purposes of prostitution where the offense level is 14. And that's so low because there's no coercion, force, all that. Correct. It's viewed as a somewhat voluntary enterprise? That is correct. And that's one of the things that distinguishes, if you will, normal prostitution under federal law from sex trafficking. It only becomes sex trafficking if there is a minor involved, then it's sex trafficking. And it could be sex trafficking if it's an adult and there's force and coercion that is used. What about the absurd result that I was suggesting to your colleague? It could go the other way, too. I actually liked your absurd result analogy. Okay. That one you'll adopt. All right, great. Give him one he doesn't want. Right. We got one that he might not. So suppose. All right. The lookout. The lookout pleads to a conspiracy. El Chapo pleads to a conspiracy. They're both to be subject to a 34? They would both have a base offense level of 34. Isn't that an absurd result? I don't think it's an absurd result because there could be things like a minor role, some sort of mitigated role, maybe even a minimal role for a lookout, whereas El Chapo would have enhancements for a leadership role, maybe multiple victims and so forth. So I don't think that is an absurd result. In this particular case, we charged six people with being part of this sex trafficking conspiracy. They were not all equally culpable. Some of them were leaders of this. Others were people that just assisted. Some were women who were originally victimized by being sexed into this gang and then later became victimizers themselves. And what the sentences that our courts have done, and we negotiated conspiracy pleas with most of them, the courts have taken that into consideration and they've varied from the guidelines. They've found mitigated or minor roles and they've adjusted the sentences accordingly so that, for example, one of the individuals in this conspiracy by the name of Jose Velasquez, he's doing 17 and a half years. That's outside of what we're looking at, yeah. Well, I'm just, what I'm doing, you're asking me about if there's two people who are part of the same conspiracy who both plead to the conspiracy and there's different culpable levels. The courts have imposed sentences reflecting that. Back to the rule of lenity for a moment. If an instance presents itself when there are two equally plausible arguments and you haven't agreed that that would bring us into a concession and the rule of lenity, right? Okay, so give me an example of when it would. No, I guess what I'm saying is I don't agree that there are two equally plausible arguments here. That's my point. You can disagree with Waylon, but you can't say it's implausible. I mean, they mentioned 2X1.1. I would agree they didn't grapple with 2X1.1 maybe the way that either we or you may have wanted them to have. But in order to say that it's implausible, you've got to say more than you disagree. Well, they didn't follow what 2X1.1 said to do. I mean, or 2X1.1 says. Do they even cite 2X1.1? They mentioned it. Yeah, they mentioned it. And they mentioned it only in the sense of directing them to that guideline. But it actually directs you to a specific basis. They didn't grapple with it. Yeah, we looked at the case. Yes, we agree. But that's not my point. Slightly different, right? Okay. They didn't grapple with it. Does that make it an implausible presentation? Because I thought plausibility is what we were talking about when we were talking about the rule of lenity. If you agree with that proposition, fine. But tell me if this isn't an instance where there are two plausible arguments. You don't agree with that. That's fine. Tell me what is. Give me an example of one that would bring about at least a discussion of the rule of lenity. I guess I'm trying to think about in this particular situation where it seems so clear to me what 2X1.1 says to do, what would be a plausible. I just don't see a plausible argument to say that a conspirator involved in a sex trafficking conspiracy should get a 14 instead of a 34 under the formula that is set forth in the sentencing guidelines. The question isn't whether they should get a 14. The question is whether it's written in a way that they should get a 14. We're not trying to outdo the commission. We're trying to deal with the language that the commission has given us to look at. If 2X1.1 was not involved, if that rule that conspiracies that are not expressly covered by a guideline, if there wasn't a section dealing with that and you just, for whatever reason, because it's a sex trafficking case, you went to 2G1.1 without the 2X1.1 direction, then I think if that was all we had to deal with, then when we're talking about offensive conviction being B1 and there's no mention of 1594C, that's probably an example where that would be plausible. You'd be in trouble then because you concede that the offensive conviction is not 1591. It's a referent. 1591 is a referent. The offensive conviction is 94. It's 1594C and the substantive offense underlying that is 1591A1 and B1. Okay. I see my time is up. Any other questions? Thank you, Mr. Semper. We'll hear rebuttal from Ms. Harris. Thank you. Thank you. Don't have an awful lot to say. It seems that you guys adequately did my rebuttal for me. I will say, for reference, the place in Wayland where they talk about 2X1.1 is on, let's see. It's only mentioned once, I think. It's only mentioned once. Well, they say that it requires them to go back to 2G1.1. And I couldn't find it. And that's when they. I couldn't find any mention of Application No. 2. Is there? It's a passing citation in the second, third paragraph. It's almost at the end of it, I think. Let me see. These Westlaw things, it's very hard for me to find out the pages. It's fine. It's all good. It's apparently on page 827 of the decision. The conundrum that they faced, and I think everybody faces, is that that section, and I went on at length about this, and you clearly understand it, only mentions 1591 subparagraph B. It doesn't talk about A at all. A law review article, the author, Mr. Richman, and his article appears on page 3, I believe it is, of Mr. Simpson's brief. He said, well, they obviously just did some really poor drafting. It was a drafting error. Maybe so, but they haven't changed it, especially since way then, and not for the many years that both of these statutes have been in effect as is. Since 2008 in both cases, I believe. And way then was in 2016. And I'd like to think that when somebody drafts a statute or a sentencing code, I'm almost out of time here, or a section of the sentencing guidelines, that they put some thought into it. These are not stupid people. These are experienced people. They're circuit judges. They're legislators. They spend a lot of time doing these things. I think they mean what they say. The plain language is what it is. The ambiguities only come when you try to torture it, as the government has, by reading something into it that isn't there. Thank you, Ms. Harris. Thank you. Thank you, Mr. Simpson. We appreciate the arguments. We'll take the matter under advisement.